IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEN JOHNSON, | : | CIVIL NO. 1:CV-10-1771 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOE WILLIAMSON, | : | |
| Respondent | : | |

# MEMORANDUM

Before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Rasheen Johnson, at the time an inmate confined at the United States Penitentiary at Lewisburg, Pennsylvania.[1] In the petition, Johnson challenges the validity of disciplinary proceedings that resulted in his loss of forty (40) days of good conduct time. The petition is ripe for consideration and, for the reasons that follow, will be denied.

## I. Background

Johnson challenges events that occurred at the Federal Correctional Institution at

---

[1] Johnson originally filed this action on August 9, 2007, in the United States District Court for the Southern District of Illinois even though at the time he was confined at USP-Lewisburg. The Illinois District Court directed service of the petition, and thereafter a response to the petition and reply thereto were submitted by the parties. (Doc. Nos. 6, 9 and 10.) On August 24, 2010, the ripe petition was transferred to this Court based upon the fact that Johnson was confined at a prison located within the Middle District of Pennsylvania when he filed the petition. See Rumsfeld v. Padilla, 542 U.S. 426 (2004)(finding that the proper respondent in a habeas corpus action is the person who has immediate custody over the petitioner at the time he files the petition.)

Recently this Court received notification that Johnson was released to a halfway house in Missouri. The fact that Johnson will serve the remainder of his sentence in a halfway house does not deprive this Court of jurisdiction over the petition. A federal prisoner released to a halfway house is still in the custody of the United States Bureau of Prisons for purposes of § 2241 until the completion of his sentence. See Wottlin v. Fleming, 136 F.3d 1032 (5th Cir. 1996). Because Johnson was confined at USP-Lewisburg at the time he filed the instant action, this Court retains jurisdiction to adjudicate the merits of the petition.

Greenville, Illinois (FCI-Greenville), his former place of confinement. While he was confined there, the staff received confidential information that Johnson possessed narcotics. His cell was subsequently searched on March 1, 2005, but no drugs were found. Johnson was thereafter placed in a dry cell pursuant to 28 C.F.R. § 552.12.[2] Once there, he was ordered by staff to provide a urine sample within two (2) hours for drug analysis. When he failed to do so, he was issued an incident report for violating Code 110, refusing to provide a urine sample. (Doc. No. 9-3, Ex. B at 2-3.) A Unit Discipline Committee ("UDC") hearing was conducted on March 7, 2005. At the hearing Johnson stated that he was in the dry cell when he was told he had to provide a urine sample, but that he did not have to "pee" at that time. He states he did urinate within 2-3 hours of being instructed to do so. The UDC referred the charge to the Discipline Hearing Officer ("DHO") for further hearing. (Id.)

A DHO hearing was held on March 10, 2005, before Robert M. Whitehouse. At the hearing, Johnson claimed that he was not told he only had two (2) hours to provide a sample, and that he did subsequently provide a sample. After considering the evidence, the DHO concluded that Johnson had committed the prohibited act. He was sanctioned to thirty (30) days of disciplinary segregation, the disallowance of forty (40) days of good conduct time, and the loss of visiting privileges for a year. (Id. at 5-7.) Johnson filed a Regional Administrative Remedy Appeal from the DHO's finding on April 22, 2005. (Doc. No. 9-4 at 2-3.) He claimed that he

---

[2] Section 552.12 provides that "[w]hen there is reasonable belief that an inmate has ingested contraband or concealed contraband in a body cavity and the methods of search specified in § 552.11 are inappropriate or likely to result in physical injury to the inmate, the Warden or designee may authorize the placement of an inmate in a room or cell for the purpose of staff's closely observing that inmate until the inmate has voided the contraband or until sufficient time has elapsed to preclude the possibility that the inmate is concealing contraband."

never refused to provide a urine sample or was told how long he had to provide one. On May 23, 2005, his appeal was denied. (Id. at 4.) Johnson filed an appeal with the Central Office on June 22, 2005. (Id. at 5.) Again he maintained that he never refused to provide a urine sample, and sought the expungement of the incident report. On August 16, 2005, his appeal was denied. (Id. at 6.)

Johnson thereafter filed the pending habeas petition wherein he claims his right to due process was violated when: (1) FCI-Greenville staff failed to adhere to 28 C.F.R. § 541.19 through § 541.23 as set forth in Program Statement 5270.07; (2) staff failed to adhere to 28 C.F.R. §§ 550.30 and 550.31 as set forth in Program Statement 6060.80; (3) Lieutenant Bowling failed to read him his rights or conduct a thorough investigation of the incident; (4) Lt. Bowling participated in the disciplinary process even though he was involved with Johnson's placement in the dry cell; (5) Officer Braning only asked Johnson if he had to urinate, but did not specifically request a urine sample; (6) Johnson was not notified that a prisoner must provide a urine sample upon being placed in a dry cell; (7) the UDC hearing was not held within 72 hours; (8) Johnson was not provided with a copy of the findings and disposition of the UDC hearing within 24 hours; (9) video of Johnson in the dry cell was not reviewed to show he did provide a urine sample; (10) the DHO did not sufficiently consider the testimony of a staff witness; (11) Johnson did not receive at least 24 hours advance written notice of the charges before his DHO hearing; (12) Johnson was denied enough time to prepare and speak with his staff representative before the hearing; and (13) his staff representative did not present any of the favorable evidence. (Doc. No. 1, Pet. at 4-6.)

## II. Discussion

### A. Exhaustion

Although Section 2241 does not contain a statutory exhaustion requirement, the United States Court of Appeals for the Third Circuit has consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of habeas corpus. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)(citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981)(per curiam)); e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required for the following reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

The exhaustion procedure established by the Bureau of Prisons to be utilized by federal inmates is set forth at 28 C.F.R. §§ 542.10-542.19. Except for claims for which other administrative procedures have been established, federal inmates may seek "formal review of an issue which relates to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). In the case of appeals from findings of a disciplinary hearing officer, an appeal of the DHO's decision shall be submitted initially to the Regional Director for the region where the inmate is currently located. 28 C.F.R. § 542.14(d)(2). The Regional Director shall respond within thirty days. 28 C.F.R. § 542.18. However, an extension of an additional thirty days for a response from the Regional Director may be made in appropriate circumstances. Id. An inmate who is not satisfied with the Regional Director's response may appeal to the General Counsel within thirty days of

the date of the Regional Director's response. 28 C.F.R. § 542.15(a). The General Counsel shall respond within forty days. 28 C.F.R. § 542.18. However, an extension of an additional forty days for a response from the General Counsel may be made in appropriate circumstances. Id. "Appeal to the General Counsel is the final administrative appeal." 28 C.F.R. § 542.15(a).

Respondent maintains that Johnson has failed to exhaust his available administrative remedies with respect to all but one of the claims set forth in the instant habeas petition. Specifically, Respondent argues that of the thirteen (13) grounds set forth in the petition, Johnson only exhausted his claim that Officer Braning never requested a urine sample from him. In support of this argument they attach a copy of both the Regional Administrative and the Central Office Administrative Remedy Appeals filed by Johnson with respect to his challenge to the DHO proceedings, and the responses thereto. (Doc. No. 9-4.) In reviewing these submissions, it is clear that in his Regional Administrative Remedy, the only claim raised by Johnson in contesting the DHO proceedings is that he was never requested to provide a urine sample. In his Central Office appeal, he appears to argue that he never refused to give urine or knew there was a time limit to do so. As such, the only claims that can arguably be viewed as exhausted are Johnson's contentions that Officer Braning never specifically requested a urine sample and that he was not notified that he must provide a sample upon being confined in the dry cell.

Johnson's only reply to Respondent's failure to exhaust argument is that the exhaustion requirement should not be strictly enforced because he is an inmate as opposed to a "professional lawyer." He argues that he is only afforded a short time to obtain and prepare proper legal materials while in segregation, and that his failure to include all grounds in his administrative

remedy filings should be excused. The Court finds this argument unpersuasive for the following reasons. This is not a situation where a petitioner was unable to access administrative remedy forms for submission. He had the required forms at his disposal and could have easily included all challenges to the DHO proceedings in the grievance and appeals therefrom. Instead, he only listed one claim. Further, if for some reason Johnson did not feel he had sufficient time within which to list all of his challenges on the administrative remedy forms, he could have sought an extension of time within which to do so. He did not. Accordingly, the Court finds that all claims, with the exception of Johnson's claims that he was not requested to provide a urine sample by Braning and/or upon being confined in the dry cell, are subject to dismissal for failure to exhaust available administrative remedies. However, even if all the claims set forth in the petition were exhausted, they are without merit for the following reasons.

**B.     Due Process**

"Habeas corpus relief is available to a prisoner who has been sanctioned in violation of due process to a loss of good conduct time." Robinson v. Warden, 250 Fed. App'x 462, 464 (3d Cir. 2007). In Wolff v. McDonnell, 418 U.S. 539, 556 (1974), the Court observed that, while inmates are entitled to a fair process before good conduct time may be removed, prison disciplinary hearings "are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) an opportunity to present witnesses and documentary evidence; (3) aid in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement of the decision by the

factfinder. Id. at 564-67.

Where the due process requirements of Wolff are met, the decision of the hearing examiner will be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457.

After Hill was decided, the Third Circuit Court of Appeals indicated in Henderson v. Carlson, 812 F.2d 874, 879 (3d Cir. 1987), that the standard to be applied in determining the sufficiency of the evidence was the one found in 28 C.F.R. § 541.17(f) - a "substantial evidence" test. Subsequent to the Henderson opinion, the BOP amended its regulations to comport with the Hill holding - requiring only that the DHO's decision be based upon at least some facts and, if there was conflicting evidence, to be "based on the greater weight of the evidence." See 28 C.F.R. § 541.17(f).

### 1. Claims that do not raise due process rights

The Court first agrees with Respondent that several of the claims raised by Johnson in his petition do not invoke the right to due process. These claims consist of Johnson's allegations that various regulations were violated by prison staff during the course of his disciplinary process. It is established that an agency's failure to follow its own regulations does not rise to

7

the level of a constitutional violation unless the regulations themselves are compelled by the Constitution. See Gibson v. Federal Bureau of Prisons, 121 Fed. App's 549, 551 (5th Cir. 2004)(finding that violation of BOP regulation in itself is not a constitutional violation); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003)("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."); United States v. Knottnerus, 139 F.3d 558, 561 n.5 (7th Cir. 1998). Further, it has been held that absent a showing of prejudice, a technical violation of BOP regulations does not necessarily require that a disciplinary sanction be vacated and remanded. See Von Kahl v. Brennan, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994)(finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief.)

     In the instant case, while Johnson contests the adequacy of the investigation conducted prior to the issuance of the misconduct by Officer Bowling, he has no due process right to a pre-hearing investigation. Further, while Johnson claims he was denied due process because Bowling not only delivered the incident report to him, but also conducted the investigation and ultimately escorted him to the dry cell, his claim is without merit. Under Wolff, an inmate who is issued a misconduct report is entitled to an impartial tribunal with respect to the disciplinary proceedings. In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO. 28 C.F.R. § 541.16(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in

the circumstances underlying the charge from sitting on the disciplinary committee." Meyers v. Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). There is no claim by Johnson that DHO Whitehouse was not impartial. The fact that Bowling may have conducted the investigation, delivered the incident report, and escorted Johnson to the dry cell is of no consequence, and does not raise a due process claim. There is no constitutional prohibition in Wolff that would prohibit Bowling from investigating the incident report.

Johnson also fails to allege any violations of due process with respect to his contentions that (1) he did not have enough time to prepare/speak with his staff representative prior to the hearing and (2) his representative failed to present favorable evidence. A prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. See Hudson v. Hedgepeth, 92 F.3d 748, 751 (8th Cir. 1996). Instead, due process requires that inmates be provided with the aid of a staff representative only where the inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." See Wolff, 418 U.S. at 570; Duarte v. Turner, 46 F.3d 1199 (7th Cir. 1995)(rejecting prisoner's habeas claim that his staff representative was ineffective for failing to discover evidence because due process under Wolff only requires the aid of a staff member where the inmate is illiterate or the issues are complex.) Johnson makes no allegation that he is illiterate, and the issues involved in the case were not complex. As such, the fact that Johnson may believe he did not meet with his representative for a long enough period of time prior to the disciplinary hearing or that the representative did not present the evidence as he had hoped do not state violations of due process. Further, Johnson fails to point to any favorable evidence that existed that was brought to his

representative's attention and was not presented by him.

In the petition Johnson also claims that he was not provided with a copy of the UDC findings and hearing disposition within one day as required by 28 C.F.R. § 541.15(f). Because compliance with a regulation is not essential to comply with the due process requirements of Wolff, this claim must fail. Moreover, it appears from the record that Johnson was provided with the findings and disposition immediately following the UDC hearing. Part II on the incident report entitled "Committee Action," reveals that the UDC hearing was conducted on March 7, 2005, and concluded at 8:20 p.m. (Doc. No. 9-3 at 2.) The Inmate Rights at Discipline Hearing form is signed by Johnson on the same date at 8:22 p.m. wherein Johnson acknowledges his rights at the DHO hearing. This demonstrates that Johnson had knowledge at that point that the charges had been referred for a DHO hearing. Further, Johnson would be hard-pressed to demonstrate prejudice in that he clearly was aware of the referral of the charges soon after the UDC hearing since the DHO hearing itself was conducted on March 10, 2005. Johnson fares no better with respect to his claim that his UDC hearing was not conducted within 72 hours as set forth in 28 C.F.R. § 541.11. First, the language in the regulation states that a UDC hearing will "ordinarily" be conducted within 3 days from the time staff become aware of an inmate's involvement in an incident. However, this time-frame is not mandatory and is subject to exceptions as set forth in the note below Table 2 of § 541.11. Further, there is no due process requirement under Wolff that the initial UDC hearing be conducted within 3 days.

### 2. Due Process Claims Not Warranting Relief

Johnson claims due process was violated when he did not receive sufficient advance notice of the charges against him prior to the DHO hearing. This claim is without merit for the

10

following reasons. Under Wolff, due process requires that the prisoner receive written notice of the claimed violation at least 24 hours in advance of the DHO hearing. Wolff, 418 U.S. at 564-66. In the instant case the record clearly demonstrates that this requirement was met. Johnson received the incident report on March 2, 2005. His UDC hearing was not held until 5 days later, on March 7, 2005. The charges were referred to the DHO, and a DHO hearing was conducted on March 10, 2005. As such, Johnson had notice of the charges against him well before 24 hours prior to the DHO hearing.

Next, Johnson contends that his due process rights were violated when the DHO failed to obtain and review video of him in the dry cell to demonstrate that he did provide a urine sample. At the DHO hearing, an inmate is entitled to make a statement, to present documentary evidence, to submit names of request witnesses, and to have them called to testify and present documents provided the calling of witness or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. 28 C.F.R. § 541.17(c). In the instant case, even if a video of the dry cell existed Johnson does not claim, and the record does not reveal, that there was ever a request made by Johnson for the DHO to review any tape. Further, Johnson himself sets forth arguments as to why his failure to provide a urine sample should have been excused. This clearly undermines any argument on his part that a video tape would support his claim that he did provide a urine sample.

With respect to Johnson's sufficiency of the evidence challenges, he also fails to demonstrate a denial of due process. Specifically, he argues that "there is no clear and present evidence" to support the DHO's findings. (Doc. No. 1 at 6.) As previously set forth, the decision of the hearing examiner will be upheld if there is "some evidence" to support the

11

decision.  See Superintendent v. Hill, 472 U.S. at 455; Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  In this case, there clearly exists sufficient evidence to demonstrate that Johnson committed the charged act of refusing to provide a urine sample.  This is supported by the reporting officers' statement, as well as Johnson's admission that he did not provide a sample and the various reasons he relied upon in support of not doing so.  Accordingly, the petition for writ of habeas corpus must be denied.  An appropriate order will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RASHEEN JOHNSON, | : | CIVIL NO. 1:CV-10-1771 |
| Petitioner, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| JOE WILLIAMSON, | : | |
| Respondent | : | |

## **ORDER**

**AND NOW,** this 27th day of October, 2010, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus is **denied**.

2. The Clerk of Court is directed to **close** this case.


                        S/ Yvette Kane
                        YVETTE KANE, Chief Judge
                        Middle District of Pennsylvania